## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**ELIZABETH TWEEDY,**
**Independent Administrator of the**
**Estate of Isaiah Espinoza,**

    **Plaintiff,**

**v.**               **Case No. 3:20-CV-1172-NJR**

**CITY OF ROBINSON, JEFFERY METZ,**
**and TERRI PANIAGUA, as**
**Special Representative of the**
**Estate of Skyler V. Williams,**

    **Defendants.**

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Thirteen-year-old Isaiah Espinoza died on August 13, 2020, when the car he was riding in left the roadway at over 100 miles per hour and crashed into a billboard pole, ejecting him from the vehicle. Espinoza and two others were passengers in a car driven by 20-year-old Skyler Williams ("Williams"), who was engaged in a high-speed pursuit with Patrolman Donald Leek ("Officer Leek") of the Robinson Police Department in Robinson, Illinois.

Espinoza's mother, Plaintiff Elizabeth Tweedy ("Tweedy"), filed this wrongful death lawsuit against the City of Robinson, asserting it is to blame for Espinoza's death. (Docs. 1, 48). Tweedy claims the City of Robinson is vicariously liable for the actions of Officer Leek, who acted with utter indifference or conscious disregard for the safety of others when he engaged Williams in a high-speed chase. (*Id.*).

Now pending before the Court are cross-motions for summary judgment filed by Tweedy (Doc. 65) and the City of Robinson (Doc. 67). The City of Robinson also has filed a Motion to Strike and Bar the Reports and Opinions of Tweedy's expert, Louis M. Dekmar. (Doc. 83).

## BACKGROUND

This case is proceeding on the Fourth Amended Complaint.[1] (Doc. 48). Tweedy, as Independent Administrator of the Estate of Isaiah Espinoza, brings claims under the Illinois Wrongful Death Act against the City of Robinson (Count 1), Terri Paniagua, as Special Representative of the Estate of Skyler Williams[2] (Count 2), and Jeffrey Metz[3] (Count 3). (*Id.*). As to the City of Robinson, Tweedy alleges that it, by and through its authorized agents or employees, demonstrated an utter indifference and/or a conscious disregard for the safety of the occupants of the vehicle operated by Williams. (*Id.*). Specifically, Tweedy claims that Officer Leek, acting as an employee of the City of

---

[1] This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1332 due to diversity of the parties. Plaintiff Elizabeth Tweedy, as Independent Administrator of the Estate of Isaiah Espinoza, is a citizen of the State of Indiana. *See* 28 U.S.C. § 1332(c)(2) ("the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent"). Defendant City of Robinson is an Illinois municipal corporation, Defendant Jeffrey Metz is an Illinois citizen, and Defendant Terri Paniagua, as Special Representative of the Estate of Skyler Williams, is an Illinois citizen. Additionally, the Fourth Amended Complaint alleges damages "in a sum of the amount of in excess of $75,000, plus attorney fees and litigation costs." (Doc. 48). While not the precise allegation of "in excess of $75,000, exclusive of interest and costs" that 28 U.S.C. § 1332 mandates, the Court is satisfied that it has subject matter jurisdiction. Tweedy seeks a sum in excess of $75,000 on all three counts of the Complaint, and the matter involves the death of a minor child. *See Sykes v. Cook Inc.*, 72 F.4th 195, 205 (7th Cir. 2023) ("the court has jurisdiction unless an award for the jurisdictional minimum would be legally impossible").

[2] Paniagua was served on January 31, 2022 (*see* Doc. 39), but she has not answered or otherwise appeared in the action.

[3] The Fourth Amended Complaint alleges that Metz failed to exercise reasonable care when he gave permission to Skyler Williams to drive his rental car, despite knowing that Williams was emotionally unfit and physically impaired to safely operate a motor vehicle. (Doc. 48 at ¶¶ 12-14). Summons was issued to Metz in March 2022 (*see* Doc. 46), but he has not appeared in the case, and there is no proof of service in the record.

Robinson, initiated a motor vehicle pursuit when a violent felony was not suspected, in
violation of the Robinson Police Department's policies, that he continued the pursuit at
speeds that created unwarranted danger to others, and that he did so with willful and
wanton disregard for the safety of others. (*Id.*).

The following facts are undisputed for the purposes of summary judgment.
Around 1:15 a.m. on August 13, 2020, Officer Leek was patrolling East Main Street in
Robinson, Illinois, when he saw a black Dodge Charger ahead of him begin to turn onto
North King Street. (Doc. 67-2 at pp. 9-10; Doc. 67-8 at p. 11). Officer Leek observed the
Charger changing lanes while simultaneously activating its turn signal in violation of the
Illinois Vehicle Code. (*Id.*). He also noticed the Charger had an out-of-state license plate.
(Doc. 67-2. at p. 12). Officer Leek did not note the plate number or run the registration,
and he did he not know who was in the vehicle. (*Id.* at p. 15).

Officer Leek began following the Charger, maintaining a distance of three to four
car lengths. (*Id.* at p. 23). From North King Street, the driver turned onto East Plum Street,
again failing to use a proper turn signal. (*Id.* at pp. 16, 24). The driver of the Charger then
approached a stop sign, came to a complete stop, and activated the turn signal to turn
south onto North Jackson Street. (*Id.*). Because the driver did not signal his turn at least
100 feet prior to making the turn, Officer Leek activated his emergency lights to initiate a
traffic stop at 1:14:24 a.m. (*Id.* at p. 17).

The driver did not stop or in any way heed the emergency lights. (*Id.* at p. 25).
Instead, at the intersection of North Jackson Street and Main Street, the driver made a left
turn through a red light and continued east on Main Street, accelerating past the posted

30 miles per hour speed limit. (*Id.* at pp. 25-26). Officer Leek turned onto Main Street at 1:14:45 a.m. At that point, it became apparent to Officer Leek that the driver was fleeing and eluding him, and Officer Leek began pursuing the vehicle. (*Id.* at pp. 17, 27-28). He called in the pursuit to dispatch at 1:15:29 a.m. (Doc. 37-8 at p. 17).

Officer Leek pursued the Charger along Main Street, which turned into Illinois Route 33, for approximately six miles, passing through a residential and commercial area before the road turned into a rural two-lane highway. Officer Leek reached a top speed of 114 miles per hour. (Doc. 67-2 at p. 18; Doc. 67-5 at p. 15). He testified that, at one point, the Charger was going so fast that he could no longer see it. (Doc. 67-2 at p. 28). Officer Leek wrote in his police report that, as he neared a side road, 1725 E, he believed the Charger had made a right turn. (Doc. 67-8 at p. 18). He turned right onto 1725 E, but did not see the vehicle. (*Id.*) He then deactivated his emergency siren and notified dispatch that he had lost sight of the vehicle. (*Id.*). As he reached 1000th Avenue, he deactivated his emergency lights and began checking the surrounding area for the vehicle. (*Id.*).

While looking for the vehicle, Officer Leek pulled up at a Casey's gas station to speak with two employees who were standing out by the road. (Doc. 67-2 at pp. 29-30). The employees told Officer Leek they heard a screech and a bang by the railroad tracks. (*Id.* at p. 30). Officer Leek traveled in that direction and found the Charger, which had gone off Route 33 and crashed. (*Id.* at p. 31). Two of the four occupants, including Espinoza, had been ejected and appeared deceased. (*Id.*). Williams was still in the driver's seat and also appeared deceased. (*Id.*). The front passenger, Morgan Wells, was transported to a hospital in Terre Haute, Indiana, with non-life-threatening injuries. (*Id.*).

In his deposition, Officer Leek testified that he terminated the pursuit before the accident occurred. (*Id.* at p. 29). He also estimated that approximately 10 minutes passed between the time he lost sight of the Charger and when he found the accident scene; in actuality, only about three and a half minutes had passed. (*Id.* at p. 29; Doc. 67-8 at p. 18).

Trooper Derek Pearce with the Illinois State Police (ISP) investigated the accident. (Doc. 67-3 at p. 4). Pearce determined that Williams was unable to maneuver a curve on Route 33, went straight off the roadway, and drove into brush before striking a billboard pole. (*Id.* at p. 5). Trooper Pearce determined the primary cause of the accident was "failing to reduce speed to avoid a crash" and the secondary cause was "improper lane usage." (*Id.* at p. 6).

Trooper Wayne Hocking, an accident reconstruction officer with the ISP, prepared an accident reconstruction report. (Doc. 67-4 at p. 6). Trooper Hocking noted that Williams refused to stop for Officer Leek around 1:15 a.m. on August 13, 2020. (*Id.* at p. 13). Williams fled eastbound on Route 33, building a lead on Officer Leek while traveling at or in excess of 106 miles per hour. (*Id.*). Trooper Hocking testified that the speed limit on Route 33 was 55 miles per hour. (*Id.* at p. 3). Williams then lost control of the Charger as he was attempting to slow down and negotiate a sharp right-hand curve. (*Id.* at p. 4). Trooper Hocking testified that Williams's speed was approximately 111 miles per hour about five seconds prior to the impact. (*Id.* at p. 7). He also explained that Williams had attempted to brake and that the vehicle began to "yaw," meaning that although Williams was trying to turn to the right, the friction of the tires was not enough to maintain a grip on the roadway. (*Id.* at p. 8). As a result, the rear of the vehicle started

to swing to the left of the driver and attempted to overtake the front tires. (*Id.*). The Charger then traveled across the highway and down an embankment before striking the billboard support post, going at least partially airborne, and striking the underside of the billboard catwalk. (*Id.* at p. 9). The car came to a rest about 51 feet east of the support post. (*Id.*).

Trooper Hocking noted that, at the time of the crash, there was not a significant volume of traffic, the roads were dry, and it was a calm night with no winds. (*Id.* at pp. 10-11). There was also a sign that said, "Speed Zone Ahead," and a flashing yellow light with a yellow diamond sign that recommended a speed of 25 miles per hour at the curve. (*Id.*). Trooper Hocking observed no evidence of any contact between Officer Leek's squad car and the Dodge Charger. (Doc. 67-4 at p. 57).

The City of Robinson retained Michael A. Sutton, P.E., a consulting engineer with Accident Research Specialists, PLLC, as an expert witness. (Doc. 67-7). Sutton opined that as Williams approached the town of Palestine, Illinois, while reaching speeds in excess of 111 miles per hour, he disregarded the speed limit, the caution signs, and the flashing yellow light. (*Id.* at p. 5). Williams continued to travel in excess of 104 miles per hour as he entered the 90-degree right hand curve and, although he continued to brake and the vehicle's stability control activated, these actions were insufficient to counteract the excessive speed of the car. (*Id.* at p. 6). Sutton determined that the high speed pursuit lasted 3 minutes, 35 seconds and that Officer Leek's average speed was 98.4 miles per hour for the approximately 5.7 miles he was on Route 33. (*Id.* at pp. 6-7). Sutton further opined that the Dodge Charger was traveling approximately 20 miles per hour faster than

the police car and maintained a distance of about one mile ahead of Officer Leek. (*Id.* at
p. 7). Finally, Sutton opined that Officer Leek turned right on 1725 E at approximately
1:18 a.m. and reported the crash site at approximately 1:22 a.m. (*Id.* at p. 8).

Although Williams was wearing his seat belt, he suffered fatal injuries from the
crash. (*Id.* at p. 13). As part of the investigation, the Crawford County Coroner's Office
performed an autopsy on Williams. (Doc. 67-4 at p. 11). Analysis performed on Williams's
blood showed that he had 3.8 nanograms per milliliter of THC in his blood, as well as
methamphetamine in his system at the time of the crash. (*Id.* at p. 12). Dr. William
Schroeder, a forensic toxicologist, could not testify to a reasonable degree of certainty that
Williams was impaired at the time of the crash based on the level of THC in his blood.
(Doc. 67-10 at p. 9). He also explained that certain medications can break down to
methamphetamine, and he was unable to testify as to whether the substance found in
Williams's system was from a legal or illegal source. (*Id.* at p. 8).

Trooper Hocking concluded "the primary causes of [the] crash were speeding,
traveling too fast for conditions, failure to reduce speed to avoid a collision, and improper
lane use by Skyler Williams." (*Id.*). He further determined that the presence of THC and
methamphetamine in Williams's system at the time of the collision was a potential
contributory cause. (*Id.*).

Trooper Hocking could not testify that Williams was no longer being pursued by
Officer Leek at the time the Charger left the road. (*Id.* at pp. 5-6). He acknowledged he
could not put himself in Williams's shoes as to whether Williams thought he was still
being pursued. (*Id.* at p. 6). His understanding was that the Charger had built enough of

a lead that when Officer Leek thought he saw the vehicle make a right turn onto a country road, that is actually when the vehicle had left the roadway and crashed. (*Id.*).

Chad Weaver was the Robinson Police Chief on August 13, 2020. (Doc. 67-5 at p. 9). Chief Weaver testified that Officer Leek, whose vehicle reached a top speed of 114 miles per hour during the pursuit, received no disciplinary action as a result of the incident. (*Id.* at p. 15). By 3 p.m. the following day, Chief Weaver had determined that "Officer Leek's actions were well within department policy and operating philosophy, so much so there's no administrative investigation planned." (*Id.* at p. 23). However, Officer Leek was placed on administrative leave at his own request. (*Id.* at pp. 15-16).

Chief Weaver testified that, in his opinion, Officer Leek complied with Robinson Police Department Policy 307 regarding pursuits, including when to terminate a pursuit and the policy on speed limits. (*Id.* at p. 25). Chief Weaver also explained that, once the Charger was going more than 21 miles per hour over the speed limit of 55, Williams was committing felony fleeing and eluding. (*Id.* at p. 23).

With regard to training on Robinson Police Department policies and procedures, Chief Weaver testified that he does not conduct any classes himself. (*Id.* at p. 16). He also has not taught any officers about when they should terminate a pursuit. (*Id.* at p. 24). Instead, a vendor, Lexipol, publishes Daily Training Bulletins in which officers are given a scenario and asked a question to test their knowledge on it. (*Id.* at pp. 16-17).

Tweedy retained a law enforcement expert, Louis M. Dekmar, who retired as Chief of Police for the City of LaGrange, Georgia, in 2023 after 50 years in the law enforcement industry. (Doc. 83-1). Dekmar opined that, contrary to the actions of a reasonable and

well-trained police officer and inconsistent with accepted law enforcement practices and
standards, Officer Leek: inexplicably failed to obtain and communicate the Charger's
license plate information despite following it for 14 blocks prior to the pursuit;
disregarded Robinson Police Department Policy 307 on "Vehicle Pursuits"; failed to
assess whether a pursuit would be consistent with "a high degree of common sense and
sound judgment" as required by Policy 307; initiated a high-speed, dangerous pursuit
that continued for six miles for three traffic violations that were not public endangering;
displayed an unwarranted determination to apprehend a suspect at any cost, which is
incompatible with Policy 307; failed to consider the gravity of the known or reasonably
suspected crime and overlooked the presence of the innocent passengers, even as the
pursuit speeds became unreasonably unsafe for those inside the vehicle, in direct
contradiction to Policy 307; and failed to assess the circumstances and understand the
facts compelling a termination of the pursuit by turning off the emergency lights and
sirens and reducing speed to alleviate pressure on the pursued vehicle. (*Id.*). Dekmar
further opined that Officer Leek did not receive proper training, if any, on when to
terminate vehicle pursuits, that Chief Weaver inappropriately relied on Lexipol for
training, and that Chief Weaver recklessly fostered an environment that prioritized
stopping violators at the expense of public safety. (*Id.*).

Robert Pusins, the City of Robinson's retained law enforcement expert, opined that
Policy 307 is a "discretionary policy," in that officers are provided with discretion to
determine whether to engage in and/or continue a pursuit. (Doc. 67-8 at p. 7).
Additionally, Policy 307 does not require a suspect to have committed a violent felony to

authorize the initiation of a pursuit. (*Id.*). Thus, a reasonable officer would conclude that Officer Leek's decision to initiate and continue the pursuit complied with Policy 307 and with generally accepted police practices, including police pursuit guidelines published by the International Association of Chiefs of Police and the Illinois Law Enforcement Training and Standards Board. (*Id.*). Pusins also opined that Officer Leek terminated the pursuit when he came to a stop on Route 33, turned onto 1725 E, and advised dispatch that he no longer had sight of the fleeing vehicle—and that a reasonable officer would conclude Officer Leek's decision to terminate the pursuit at that time complied with Policy 307. (*Id.* at p. 8).

I.    **Motion to Strike and Bar Louis M. Dekmar's Reports and Opinions**

The Court first addresses the City of Robinson's Motion to Strike and Bar the Testimony of Tweedy's retained expert, Louis M. Dekmar. (Doc. 83). The City first argues that Dekmar's opinions are irrelevant and unhelpful to the jury to the extent they concern certain theories of liability for which the City of Robinson is immune under the Illinois Tort Immunity Act. Second, the City argues that Dekmar's opinions relating to Chief Weaver's oversight of the Robinson Police Department, as well as the policies and procedures of the Robinson Police Department, are irrelevant because they do not address the actions of Officer Leek. Finally, the City of Robinson moves to exclude the remainder of Dekmar's opinions because his expert disclosure did not comply with the procedural requirements of Rule 26(a)(2)(B).

A.  *Daubert Standard*

"A district court's decision to exclude expert testimony is governed by Federal

Rules of Evidence 702 and 703, as construed by the Supreme Court in *Daubert v. Merrell*

*Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)." *Brown v. Burlington*

*Northern Santa Fe Ry. Co.*, 765 F.3d 765, 771 (7th Cir. 2014). The *Daubert* standard applies

to all expert testimony, whether based on scientific competence or other specialized or

technical expertise. *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000) (citing *Kumho*

*Tire Co., Ltd. v. Carmichael*, 526 U.S.137, 141 (1999)).

> Federal Rule of Evidence 702 provides that expert testimony is admissible if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will
>     help the trier of fact to understand the evidence or to determine a
>     fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the
>     facts of the case.

FED. R. EVID. 702.

The district court is the gatekeeper with respect to the screening of expert

testimony in ensuring it is both relevant and sufficiently reliable. *C.W. ex rel. Wood v.*

*Textron, Inc.*, 807 F.3d 827, 834 (7th Cir. 2015). The district court "must engage in a three-

step analysis before admitting expert testimony." *Gopalratnam v. Hewlett-Packard Co.*,

877 F.3d 771, 779 (7th Cir. 2017). The Court must determine whether: (1) the witness is

qualified; (2) the expert's methodology is reliable; and (3) the testimony will assist the

trier of fact in understanding the evidence or determining a fact in issue. *Id.*

The "key to the gate is not the ultimate correctness of the expert's conclusions.

Instead, it is the soundness and care with which the expert arrived at her opinion; the

inquiry must 'focus . . . solely on principles and methodology, not on the conclusions they

generate.'" *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013) (citing *Daubert*, 509 U.S. at 595).

B. *Relevancy*

In his initial and supplemental reports, among other things, Dekmar opines on the role a police chief plays in training personnel, Chief Weaver's responsibility and failure to investigate the instant police pursuit that resulted in a fatality, Robinson Police Department policies regarding reporting requirements, and how Chief Weaver's swift determination that Officer Leek's actions were within department policy was a departure from both Illinois law enforcement standards and Robinson's own departmental policy. (Doc. 83-1 at pp. 13-21; Doc. 83-2 at pp. 1-4). Dekmar also criticizes Chief Weaver's "deficit of knowledge and understanding of accepted law enforcement standards and practices" regarding police pursuits, and his failure to provide ongoing training and supervision (instead relying on an online vendor), concluding that by neglecting even the most fundamental of police practices, the City of Robinson and its police chief effectively endorsed Officer Leek's conduct as their own. (*Id.*).

The City of Robinson argues these opinions are not relevant to any fact in issue and, therefore, they should be excluded under Federal Rule of Evidence 702. Specifically, Tweedy's Fourth Amended Complaint asserts vicarious liability against the City of Robinson based on the alleged willful and wanton conduct of Officer Leek during the police pursuit on August 13, 2020. Tweedy has not, however, alleged any form of direct negligence on the part of the City of Robinson or Chief Weaver. Because Dekmar's opinions in paragraphs 20 through 41 of his initial report and paragraphs 3 through 12 of

his supplemental report focus on the policies, procedures, and structure of the Robinson Police Department rather than any actions of Officer Leek, they are not relevant to any fact in issue and should be excluded.

In response, Tweedy argues that Dekmar's challenged opinions rebut any argument that Officer Leek's conduct was "part of his training," or was "in compliance" with the City of Robinson's policies, or that an investigation by the Robinson Police Department found Officer Leek's conduct to be appropriate. As such, these opinions are all relevant under Federal Rule of Evidence 401.

"[I]n order for an expert's testimony to qualify as 'relevant' under Rule 702 it must assist the jury in determining *any* fact at issue in the case . . . the expert's testimony need not relate to the ultimate issue in order to be relevant." *Smith v. Ford Motor Co.*, 215 F.3d 713, 721 (7th Cir. 2000); *Stuhlmacher v. Home Depot U.S.A., Inc.*, 774 F.3d 405, 409 (7th Cir. 2014). Here, Dekmar's opinions regarding the training offered by the Robinson Police Department, Chief Weaver's lack of investigation into the incident, and his subsequent determination that Officer Leek's actions complied with department procedures are relevant to the jury's assessment of Officer Leek's state of mind before, during, and after the pursuit and its determination of whether Officer Leek engaged in willful and wanton conduct. The Court further agrees with Tweedy that Dekmar's opinions could be used to rebut an argument that Officer Leek's conduct conformed with his training, that he complied with the City of Robinson's policies, or that any investigation by the Robinson Police Department found Officer Leek's conduct to be appropriate. Because Dekmar's opinions are relevant to facts at issue in the case, they are admissible under Rule 702.

C.  *Illinois Tort Immunity Act*

The City of Robinson also argues that the same opinions within Dekmar's initial
and supplemental reports are critical of the structure, organization, and administration
of the Robinson Police Department—issues for which the City of Robinson has immunity
under the Illinois Local Governmental and Governmental Employees Tort Immunity Act,
745 ILCS 10/4-102 ("Tort Immunity Act"). Because the City of Robinson has immunity
with regard to its provision of police protection services, it again argues these opinions
are irrelevant and inadmissible.

The Tort Immunity Act protects local public entities and public employees from
liability arising from the operation of government. *Andrade v. City of Kankakee*, 238 N.E.3d
381, 387, *appeal denied*, 232 N.E.3d 18 (Ill. 2024). Section 4-102 of the Act, cited by the City
of Robinson, provides that a public entity or public employee enjoys absolute immunity
for a failure to provide police protection or a failure to prevent the commission of a crime.

> Neither a local public entity nor a public employee is liable for failure to
> establish a police department or otherwise provide police protection service
> or, if police protection service is provided, for failure to provide adequate
> police protection or service, failure to prevent the commission of crimes,
> failure to detect or solve crimes, and failure to identify or apprehend
> criminals.

745 ILCS 10/4-102.

Illinois courts have explained that "police protection services" include "[p]olice
efforts to aid, assist, or rescue individuals." *Payne v. City of Chicago*, 16 N.E.3d 110, 119
(Ill. App. Ct. 2014). For example, an officer assisting a motorist in an accident and not
investigating the accident scene was found to be providing a police protection service;

thus, the officer was entitled to immunity. *Id.* (citing *McElmeel v. Village of Hoffman Estates*, 835 N.E.2d 183, 187 (Ill. App. Ct. 2005)). Section 4-102 does not contain an exception for willful and wanton conduct. *Andrade,* 238 N.E.3d at 387.

Whether the City of Robinson has immunity under section 4-102 is not relevant in this case. Tweedy has not sued the City of Robinson for its failure to provide adequate police protection services. Instead, she has sued the City of Robinson for Officer Leek's willful and wanton conduct in the execution or enforcement of laws. Thus, the Court finds section 2-202 is the applicable provision of the Tort Immunity Act. That section provides a public employee with immunity for acts or omissions while the employee is executing or enforcing a law, unless the acts or omissions constitute willful and wanton conduct. *Payne*, 16 N.E.3d at 120. "Being engaged in the execution or enforcement of a law means that the public employee is engaged in a course of conduct designed to carry out or put into effect a law." *Andrade,* 238 N.E.3d at 389.

Here, Officer Leek was enforcing laws, not providing police protection services, when he attempted a traffic stop on Williams and ultimately pursued the Charger at high speeds for approximately six miles. Thus, Officer Leek—and therefore the City of Robinson—is entitled to immunity unless he acted willfully and wantonly. And, as discussed above, Dekmar's opinions regarding the structure, organization, and administration of the Robinson Police Department are relevant to the jury's determination of whether Officer Leek's actions complied with department procedures and, ultimately, whether he acted willfully and wantonly during his pursuit of Williams. Accordingly, the Court finds that Dekmar's opinions are admissible.

D. *Compliance with Rule 26(a)(2)(B)*

Last, the Court addresses the City of Robinson's contention that all of Dekmar's opinions should be barred because his expert reports did not attach his curriculum vitae (CV), a disclosure of compensation, or a list of cases he has testified in over the last four years as required by Rule 26(a)(2)(B). The City of Robinson acknowledges that Tweedy attached an affidavit from Dekmar to her Motion for Summary Judgment, which included Dekmar's CV, list of publications, and a list of cases he has served as an expert in over the last four years, but it argues the disclosures were too late. (*See* Docs. 65-2, 65-3). Moreover, Dekmar never disclosed his compensation for this matter.

In response, Tweedy states that all of the items required by Rule 26(a)(2)(B) have now been provided. Tweedy notes that, although Dekmar's initial report referenced an Appendix containing his CV, the City of Robinson never mentioned that the Appendix was missing until it filed its motion to bar Dekmar's testimony. And since then, Tweedy argues, she has provided the City of Robinson with all of the required information, including Dekmar's compensation and payments to date. Tweedy asserts that because the City of Robinson waited over a year to point out the missing information and because it never deposed Dekmar anyway, any deficiencies with Dekmar's disclosures were harmless.

In reply, the City of Robinson argues that the deficiencies were not harmless because discovery was closed when the missing information was finally provided. As a result, it could not conduct discovery concerning Dekmar's prior body of work.

Rule 26(a)(2)(B) requires a retained expert to provide a written report that contains:

(i) a complete statement of all opinions the witness will express and the basis and reasons

for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits

that will be used to summarize or support them; (iv) the witness's qualifications,

including a list of all publications authored in the previous 10 years; (v) a list of all other

cases in which, during the previous 4 years, the witness testified as an expert at trial or

by deposition; and (vi) a statement of the compensation to be paid for the study and

testimony in the case. FED. R. CIV. P. 26(a)(2)(B).

A party who fails to provide information required by Rule 26(a) is prohibited from

introducing that evidence or witness at trial "unless the failure was substantially justified

or is harmless." *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 417 (7th Cir. 2019); FED. R.

CIV. P. 37(c)(1). Courts must consider the following factors in determining whether to

impose Rule 37 sanctions: "(1) the prejudice or surprise to the party against whom the

evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of

disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the

evidence at an earlier date." *Id.* (quoting *Tribble v. Evangelides*, 670 F.3d 753, 760 (7th Cir.

2012)).

In this instance, there was little to no surprise to the City of Robinson. Dekmar's

initial report begins with a comprehensive section on his qualifications, including his

education and training and a detailed history of his nearly 50 years in law enforcement.

(Doc. 83-1). Moreover, the omissions were harmless. A trial date has not been set, so the

case has not been delayed, and the City of Robinson did not depose Dekmar, so it was

not deprived of information necessary to prepare for his deposition. Although the City

of Robinson claims that discovery was closed by time it received the omitted information, it could have moved the Court to reopen discovery for the limited purpose of deposing Dekmar on his credentials, publications, and litigation history, which would have cured any alleged prejudice. The Court also finds no bad faith or willfulness on Tweedy's part in inadvertently failing to attach the Appendix containing Dekmar's CV, publication list, and litigation history to his report.

Finally, as noted by Tweedy's counsel, a phone call or an email message more than a year ago would have alerted counsel that the Appendix and Dekmar's fee schedule were missing from the disclosure. "Rule 37 . . . provides recourse for parties actually harmed by a litigant's noncompliance with disclosure obligations. It does not safeguard a party's decision to sense an error, seize on it, and then, when it is resolved, claim incurable harm in the face of apparent remedies. Litigation is adversarial, not a game of gotcha." *Uncommon*, 926 F.3d at 419. While the Court acknowledges that it was not the City of Robinson's duty to request the materials but rather Tweedy's burden to produce them, a little professional courtesy would have gone a long way toward resolving this issue.

For these reasons, the Court declines to sanction Tweedy under Rule 37 for the inadvertent omission of Dekmar's CV, list of publications, compensation, and litigation history. The motion to Strike and Bar Louis M. Dekmar's Reports and Opinions (Doc. 83) is denied.

## II.    City of Robinson's Motion for Summary Judgment

### A.  *Legal Standard*

Summary judgment is appropriate where there is no genuine dispute of material
fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In
determining whether a genuine issue of fact exists, the Court views the evidence and
draws all reasonable inferences in favor of the non-moving party. *Ziccarelli v. Dart*,
35 F.4th 1079, 1083 (7th Cir. 2022). Once the moving party sets forth the basis for summary
judgment, the burden shifts to the nonmoving party who must go beyond mere
allegations and offer specific facts showing that there is a genuine issue of fact for trial.
FED. R. CIV. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). A moving party
is entitled to judgment as a matter of law where the non-moving party "has failed to make
a sufficient showing on an essential element of her case with respect to which she has the
burden of proof." *Celotex,* 477 U.S. at 323.

### B.  *Willful and Wanton Conduct*

The City of Robinson first argues that it is entitled to judgment as a matter of law
because Officer Leek's actions did not rise to the level of willful and wanton conduct as
defined by the Tort Immunity Act. As discussed above, section 2-202 of the Tort
Immunity Act immunizes public employees for the acts or omissions in the execution or
enforcement of a law unless the act or omission constitutes willful and wanton conduct.
745 ILCS 10/2-202. The Tort Immunity Act defines willful and wanton conduct as
"a course of action which shows an actual or deliberate intention to cause harm or which,
if not intentional, shows an utter indifference to or conscious disregard for the safety of

others or their property." 745 ILCS 10/1-210. Under section 2–109, if an employee of a local public entity is not liable for injuries, then the public employer also is not liable. 745 ILCS 10/2-109.

"The question of whether an officer's actions amount to willful and wanton misconduct is normally reserved for the trier of fact" unless "the evidence viewed in the light most favorable to the nonmovant so overwhelmingly favors the movant that no contrary determination based on that evidence could ever stand." *Shuttlesworth v. City of Chicago*, 879 N.E.2d 969, 974 (Ill. App. Ct. 2007). In *Suwanski v. Village of Lombard*, the Illinois Court of Appeals explained that "in the context of police pursuits there exists a wide array of factual possibilities which create a range of conduct that will fall somewhere on the spectrum of liability." *Suwanski v. Village of Lombard*, 794 N.E.2d 1016, 1023 (Ill. App. Ct. 2003).

> Some situations will be so benign as to clearly be, as a matter of law, below the theoretical minimum for willful and wanton conduct. Those cases should, of course, be disposed of by summary judgment. There may also be some cases where the circumstances are so egregious that one could say, as a matter of law, that the officer acted willfully and wantonly. The third possibility is those circumstances where the question of willful and wanton conduct is the subject of reasonable argument. It is those cases that cannot be decided as a matter of law and must be put to the jury.

*Id.*

In *Suwanski*, an officer attempted to stop a vehicle that was driving below the speed limit and had so much debris on both its hood and roof that it was partially obstructing the windshield. *Id.* at 1018. Instead of stopping, the driver drove through a stop sign and the car began weaving in its lane. *Id.* The vehicle then increased its speed

to 15 miles over the speed limit while dropping debris on the roadway. *Id.* Around the same time, a dispatcher informed the officer that the vehicle was stolen. *Id.* As the pursuit continued, another driver crashed into a construction sign in an attempt to avoid a collision with the pursued vehicle. *Id.* at 1019. The pursuit still continued, reaching speeds of 100 miles per hour, and ended only when the pursued vehicle collided with another car, injuring the passenger of that vehicle. *Id.* at 1020.

On appeal of the trial court's grant of summary judgment, the appellate court reversed, finding that the question of willful and wanton conduct was the subject of reasonable argument. *Id.* at 1023. The clear weather and dry roads, the time of day, the day of the week, the light traffic conditions, the fact that the driver was committing a Class 2 felony, and the fact that the vehicle was weaving and dropping debris all supported a finding of no willful and wanton conduct. *Id.* at 1023-24. On the other hand, the suburban, residential, and commercial nature of the area, the speed of 100 miles per hour, the 6.5-mile length of the pursuit, the duration of over eight minutes, the fact that the pursued vehicle was running red lights and stop signs, the fact that there was a near collision and an actual collision related to the pursuit, and the fact that the driver was only suspected of a nonviolent, property-based felony "clearly support[ed] a finding of willful and wanton conduct." *Id.* at 1024. Facts that could be interpreted both for and against a finding of willful and wanton conduct included the degree to which the officer complied with the police department's pursuit policy and competing expert testimony on the issue. *Id.* Because there were issues for a jury to determine, the court found summary judgment for the defendant to be inappropriate.

Similarly, in *Robinson v. Village of Sauk Valley*, an Illinois appellate court found certain undisputed facts could support a finding of willful and wanton conduct. 178 N.E.3d 778, 787 (Ill. App. Ct. 2021). In that case, the pursuit entered suburban, residential, and commercial areas, it crossed state lines, the vehicles' speeds reached upwards of 100 miles per hour, the pursued driver disregarded traffic signals and drove into oncoming traffic, and the driver was suspected only of driving stolen vehicles, which are non-violent, property-based felonies. *Id.* Under those facts, the Court found that whether the officer defendants engaged in willful and wanton conduct was a jury question. *Id.*

Like *Suwanski* and *Robinson*, the Court finds the question of whether Officer Leek's actions constituted willful and wanton conduct is the subject of reasonable argument. Although Williams failed to activate his turn signal 100 feet prior to turning, Officer Leek admitted that Williams never ran a stop sign, never drove over the speed limit, never drove erratically, and never crossed the center line prior to the pursuit. (Doc. 82-2 at p. 9). It is also undisputed that, after he failed to stop for Officer Leek, Williams disregarded a red light and increased his speed to over 100 miles per hour. Officer Leek likewise increased his speed to upwards of 114 miles per hour and continued the pursuit for 5.7 miles while passing residential and commercial areas before entering a dark, two-lane section of highway. These factors favor of a finding of willful and wanton conduct.

On the other hand, it is undisputed that Williams committed minor traffic violations, Officer Leek's lights and siren were activated, he maintained control of his patrol vehicle and was not in close proximity to Williams, the weather was clear, the road

was dry, and the pursuit occurred partially in a rural area with only one other vehicle present on the road. These factors favor a finding of no willful and wanton conduct.

Finally, as in *Suwanski*, there are facts that could be interpreted either way. Both parties have presented competing expert testimony regarding Officer Leek's compliance with Policy 307, as well as the training afforded to officers by the Robinson Police Department. *See Winston v. City of Chicago*, 136 N.E.3d 188, 197 (Ill. App. Ct. 2019) (finding officers' violation of pursuit policy as evidence to be considered in determining whether willful and wanton conduct has been shown).

The Court finds the cases cited by the City of Robinson to be inapposite. In *Jackson v. Kane County*, an officer attempted to pull over a driver for squealing her tires while making a turn. 220 N.E.3d 318, 323 (Ill. App. Ct. 2021). Both vehicles were stopped at a red light, but when it turned green, the suspect immediately accelerated to 80 miles per hour. *Id.* The officer followed the driver for less than a minute before pulling back from the pursuit. *Id.* at 323-24. The driver then crashed into the median and ultimately died from her injuries. *Id.* Relying on *Suwanski*, the plaintiff in that case argued a jury should decide whether the officer's conduct was willful and wanton. *Id.* at 324. The trial court disagreed and dismissed the plaintiff's case with prejudice. *Id.* at 321. The appellate court affirmed the dismissal and distinguished *Suwanski*, noting that there was no basis for finding that the officer even engaged in a chase. *Id.* at 324. The crash occurred almost immediately after the light turned green, and the officer was already falling back when the accident occurred. *Id.*

In *Laco v. City of Chicago*, the court noted that although the pursuit occurred in a residential area, the traffic was light, the roads were dry, and the officers encountered no other drivers. *Laco v. City of Chicago*, 507 N.E.2d 64, 68 (Ill. App. Ct. 1987). Furthermore, and importantly, the pursuit in *Laco* covered only six city blocks, and the officers' speed varied from 15 miles per hour to 40 or 45 miles per hour. *Id.* Even when the fleeing driver increased his speed, the officers did not, which indicated "a regard for the safety of others, rather than an utter indifference or conscious disregard of their safety." *Id.* Thus, summary judgment for the defendant was appropriate in that case. *Id.*

In *Shuttlesworth*, the court rejected the plaintiffs' argument that a question of fact existed regarding whether the officers engaged in willful and wanton conduct. 879 N.E.2d at 975. There, the driver of the subject vehicle accelerated in the direction of the officer, who had exited his vehicle, before speeding away. *Id.* at 971. The officer and his partner then pursued the vehicle for only 30 to 40 seconds, driving the speed limit for the first few blocks and accelerating to only about 40 to 50 miles per hour. *Id.*

And in *Wade v. City of Chicago*, the officer testified he was never in "pursuit" of the subject vehicle, the entire incident occurred over two city blocks, and the officer drove the speed limit of 30 to 35 miles per hour. 847 N.E.2d 631, 635 (Ill. App. Ct. 2006).

Unlike these cases, the evidence here, when viewed in the light most favorable to Tweedy, does not so overwhelmingly favor the City of Robinson such that no contrary determination based on the evidence could ever stand. *See Shuttlesworth*, 879 N.E.2d at 974. The pursuit continued for nearly six miles and reached speeds of 114 miles per hour, and the only violation Williams committed prior to eluding Officer Leek was failing to

use his turn signal properly. There is also competing expert testimony on the issue of whether Officer Leek engaged in willful and wanton conduct. Accordingly, summary judgment is not appropriate.

C. *Proximate Cause*

The City of Robinson next argues that it was not a proximate cause of the accident. Instead, it asserts that Skylar Williams was the sole proximate cause of the accident when he disregarded the marked curve in the road, the warnings to reduce speed to 30 miles per hour, and the flashing yellow sign warning of the curve. The City of Robinson further argues that, at the point where the Dodge Charger encountered the curve and left the roadway, Officer Leek had already lost sight of it and was not in close physical proximity, and he had terminated his pursuit.

Although proximate cause is ordinarily a question of fact for the jury to decide, "where the facts are undisputed and reasonable people would not differ as to the inferences to be drawn from the facts, proximate cause may be determined as a matter of law." *Robinson*, 178 N.E.3d at 787-88.

Under Illinois law, the term "proximate cause" encompasses cause in fact and legal cause. *Id.* at 788; *Suwanski*, 794 N.E.2d at 1022. Cause in fact exists where there is a reasonable certainty that a defendant's acts caused the injury or damage. *Id.* "A defendant's conduct is a cause in fact of the plaintiff's injury only if that conduct is a material element and a substantial factor in bringing about the injury." *Id.* (citation omitted). "A defendant's conduct is a material element and a substantial factor in bringing about an injury if, absent that conduct, the injury would not have occurred." *Id.*

Legal cause relates to the foreseeability of the injury. *Id.* "[A] negligent act is a legal proximate cause of an injury if the injury is of the type that a reasonable person would foresee as a likely result of his conduct." *Id.* "Where reasonable minds could differ as to whether a defendant's conduct was a substantial factor in bringing about a plaintiff's injury, there is a question for the jury to decide." *Id.*

Regarding cause in fact, Illinois courts have found that "a police pursuit is unique in the sense that it can occur only if two vehicles are involved, the car that is fleeing and the car that is chasing. It is essentially symbiotic; both vehicles are necessary to have a chase." *Robinson*, 178 N.E.3d at 788 (quoting *Suwanski*, 794 N.E.2d at 1022). The City of Robinson argues that Officer Leek could not be a cause in fact of the accident when he had already lost sight of the Charger, he was not in close proximity, and he had terminated his pursuit when the accident occurred. The Court is not convinced. Having viewed Officer Leek's dashcam video, it appears that the Charger's lights were visible in the distance for most of the pursuit. When Officer Leek lost sight of the Charger, he believed the vehicle had turned right onto 1725 E, so he also turned right onto that road. Another explanation, however, is that the moment the lights disappeared is when the Charger failed to maneuver the 90-degree right curve just ahead of 1725 E and crashed. Thus, a reasonably jury could conclude that by the time Officer Leek terminated his pursuit, the accident had already occurred. Moreover, a jury could find that if Officer Leek had discontinued his pursuit, it is possible Williams would have slowed down and the accident would not have occurred. Because reasonable minds could differ as to whether Officer Leek's actions were a substantial factor in bringing about the injury,

summary judgment is not appropriate.

As to legal causation, a reasonable jury could also find that the accident, and therefore Espinoza's death, was a foreseeable result of traveling at extremely high speeds down a two-lane county highway at night. Additionally, Officer Leek presumably knew there was a sharp curve in the road ahead, while also knowing the Charger had an out-of-state license plate. Alternatively, a reasonable jury could find it unforeseeable that the Charger would leave the roadway and collide with a billboard post, killing three of the four occupants.

Because the Court cannot say as a matter of law that no reasonable jury could find Officer Leek's conduct to be a proximate cause of Espinoza's death, the City of Robinson is not entitled to summary judgment.

### III.    Tweedy's Motion for Partial Summary Judgment

Tweedy also moves for partial summary judgment on the issue of liability alone. She argues that the City of Robinson, through its agent and employee, Officer Leek, consciously disregard the safety of the general public when he engaged in a reckless and unreasonable pursuit of Skyler Williams that resulted in the unnecessary deaths of three young men. As discussed above, however, there are questions of fact that must be resolved by a jury regarding causation and whether Officer Leek acted willfully and wantonly. Thus, for the same reason that the Court has denied summary judgment to the City of Robinson, it also denies summary judgment to Tweedy.

### CONCLUSION

For these reasons, the Motion for Partial Summary Judgment filed by Plaintiff Elizabeth Tweedy (Doc. 65) is **DENIED**. The Motion for Summary Judgment (Doc. 67) and the Motion to Strike and Bar the Reports and Opinions of Louis M. Dekmar (Doc. 83) filed by Defendant City of Robinson are also **DENIED**.

A status conference to determine a firm trial date shall be set by separate order.

**IT IS SO ORDERED.**

**DATED:   June 24, 2025**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judges**